CARSON ET AL. *v.* AMERICAN BRANDS, INC., T/A
AMERICAN TOBACCO CO., ET AL.

No. 79–1236.  Argued December 10, 1980—Decided February 25, 1981

BRENNAN, J., delivered the opinion for a unanimous Court.

*Napoleon B. Williams, Jr.*, argued the cause for petitioners. With him on the briefs were *Henry L. Marsh III, Jack Greenberg, James M. Nabrit III,* and *Barry L. Goldstein.*

*Henry T. Wickham* argued the cause for respondent American Brands, Inc. With him on the brief were *Paul G. Pennoyer, Jr., Bernard W. McCarthy,* and *D. Eugene Webb, Jr. Jay J. Levit* argued the cause for respondent unions. With him on the brief was *James F. Carroll.*

*Harlon L. Dalton* argued the cause for the United States et al. as *amici curiae* urging reversal. With him on the brief were *Solicitor General McCree, Assistant Attorney General Days, Deputy Solicitor General Wallace, Brian K. Landsberg, Marie E. Klimesz,* and *Leroy D. Clark.**

JUSTICE BRENNAN delivered the opinion of the Court.

The question presented in this Title VII class action is whether an interlocutory order of the District Court denying a joint motion of the parties to enter a consent decree containing injunctive relief is an appealable order.

## I

Petitioners, representing a class of present and former black seasonal employees and applicants for employment at the

---

*\*Robert E. Williams* and *Douglas S. McDowell* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging reversal.

Richmond Leaf Department of the American Tobacco Co., brought this suit in the United States District Court for the Eastern District of Virginia under 42 U. S. C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.* Alleging that respondents[1] had discriminated against them in hiring, promotion, transfer, and training opportunities, petitioners sought a declaratory judgment, preliminary and permanent injunctive relief, and money damages.

After extensive discovery had been conducted and the plaintiff class had been certified,[2] the parties negotiated a settlement and jointly moved the District Court to approve and enter their proposed consent decree. See Fed. Rule Civ. Proc. 23 (e).[3] The decree would have required respondents to give hiring and seniority preferences to black employees and to fill one-third of all supervisory positions in the Richmond Leaf Department with qualified blacks. While agreeing to the terms of the decree, respondents "expressly den[ied] any violation of . . . any . . . equal employment law, regulation, or order." App. 25a.

The District Court denied the motion to enter the proposed decree. 446 F. Supp. 780 (1977). Concluding that preferential treatment on the basis of race violated Title VII and

---

[1] Respondents in this case are: American Brands, Inc., which operates the Richmond Leaf Department of the American Tobacco Co.; Local 182 of the Tobacco Workers International Union, the exclusive bargaining agent for all hourly paid production unit employees of the Richmond Leaf Department; and the International Union.

[2] The class was certified pursuant to Federal Rule of Civil Procedure 23 (b)(2). It consisted of black persons who were employed as seasonal employees at the Richmond Leaf Department on or after September 9, 1972, and black persons who applied for seasonal employment at the Department on or after that date.

[3] Rule 23 (e) provides:

"A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

the Constitution absent a showing of past or present discrimination, and that the facts submitted in support of the decree demonstrated no "vestiges of racial discrimination," *id.*, at 790, the court held that the proposed decree illegally granted racial preferences to the petitioner class. It further declared that even if present or past discrimination had been shown, the decree would be illegal in that it would extend relief to *all* present and future black employees of the Richmond Leaf Department, not just to *actual* victims of the alleged discrimination. *Id.*, at 789.

The United States Court of Appeals for the Fourth Circuit, sitting en banc, dismissed petitioners' appeal for want of jurisdiction. 606 F. 2d 420 (1979). It held that the District Court's refusal to enter the consent decree was neither a "collateral order" under 28 U. S. C. § 1291,[4] nor an interlocutory order "refusing" an "injunctio[n]" under 28 U. S. C. § 1292 (a)(1).[5] Three judges dissented, concluding that the order refusing to approve the consent decree was appealable under 28 U. S. C. § 1292 (a)(1).

Noting a conflict in the Circuits,[6] we granted certiorari.

---

[4] Although the Court of Appeals did not expressly mention the collateral-order doctrine, petitioners argued that the District Court order was appealable under that doctrine, and the Court of Appeals cited cases decided under that doctrine. 606 F. 2d, at 423–424, citing *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463 (1978); *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541 (1949); and *Seigal* v. *Merrick,* 590 F. 2d 35 (CA2 1978).

[5] Title 28 U. S. C. § 1292 (a)(1) provides:

"(a) The courts of appeals shall have jurisdiction of appeals from:

"(1) Interlocutory orders of the district courts of the United States, . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court . . . ."

[6] Compare *Norman* v. *McKee,* 431 F. 2d 769 (CA9 1970) (refusal to enter consent decree appealable under § 1291), cert. denied *sub nom. Security Pacific National Bank* v. *Myers,* 401 U. S. 912 (1971), and *United States* v. *City of Alexandria,* 614 F. 2d 1358 (CA5 1980) (refusal to enter consent decree appealable under § 1292 (a)(1)), with *Seigal* v. *Merrick, supra* (not appealable under § 1291), and 606 F. 2d 420 (CA4 1979) (case below) (not

447 U. S. 920 (1980). We hold that the order is appealable under 28 U. S. C. § 1292 (a)(1), and accordingly reverse the Court of Appeals.[7]

## II

The first Judiciary Act of 1789, 1 Stat. 73, established the general principle that only *final* decisions of the federal district courts would be reviewable on appeal. 28 U. S. C. § 1291. See *Baltimore Contractors, Inc.* v. *Bodinger,* 348 U. S. 176, 178–179 (1955); *Cobbledick* v. *United States,* 309 U. S. 323, 324–325 (1940). Because rigid application of this principle was found to create undue hardship in some cases, however, Congress created certain exceptions to it. See *Baltimore Contractors, Inc.* v. *Bodinger, supra,* at 180–181. One of these exceptions, 28 U. S. C. § 1292 (a)(1), permits appeal as of right from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, *refusing* or dissolving *injunctions* . . . ." (Emphasis added.)[8]

Although the District Court's order declining to enter the proposed consent decree did not in terms "refus[e]" an "injunctio[n]," it nonetheless had the practical effect of doing so. Cf. *General Electric Co.* v. *Marvel Rare Metals Co.,* 287 U. S. 430, 433 (1932). This is because the proposed decree

---

appealable under § 1291 or § 1292 (a)(1)). See also *In re International House of Pancakes Franchise Litigation,* 487 F. 2d 303 (CA8 1973) (refusal to enter proposed settlement agreement appealable; no discussion of jurisdictional question).

[7] We therefore need not decide whether the order is also appealable under 28 U. S. C. § 1291.

[8] This statutory exception was first established by the Evarts Act of 1891, § 7, 26 Stat. 828, which authorized interlocutory appeals "where . . . an injunction shall be granted or continued by interlocutory order or decree." In 1895, that Act was amended to extend the right of appeal to orders of the district courts refusing requests for injunctions. 28 Stat. 666. Although the reference to orders refusing injunctions was dropped from the statute in 1900 for reasons not relevant here, 31 Stat. 660, the reference was reinstated in § 129 of the Judicial Code of 1911, 36 Stat. 1134, and has since remained part of the statute.

would have permanently enjoined respondents from discriminating against black employees at the Richmond Leaf Department, and would have directed changes in seniority and benefit systems, established hiring goals for qualified blacks in certain supervisory positions, and granted job-bidding preferences for seasonal employees. Indeed, prospective relief was at the very core of the disapproved settlement.[9]

For an interlocutory order to be immediately appealable under § 1292 (a)(1), however, a litigant must show more than that the order has the practical effect of refusing an injunction. Because § 1292 (a)(1) was intended to carve out only a limited exception to the final-judgment rule, we have construed the statute narrowly to ensure that appeal as of right under § 1292 (a)(1) will be available only in circumstances where an appeal will further the statutory purpose of "permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Baltimore Contractors, Inc.* v. *Bodinger, supra,* at 181. Unless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.

In *Switzerland Cheese Assn., Inc.* v. *E. Horne's Market, Inc.,* 385 U. S. 23 (1966), for example, petitioners contended that the District Court's denial of their motion for summary judgment was appealable under § 1292 (a)(1) simply because

---

[9] Neither the parties nor the Court of Appeals dispute that the predominant effect of the proposed decree would have been injunctive. The parties entitled the major part of the decree, "Injunctive Relief for the Class," and expressly agreed that respondents would be *"permanently enjoined"* from discriminating against black employees at the facilities of the Richmond Leaf Department." App. 26a, 27a (emphasis added). The Court of Appeals, in construing the effect of the District Court's action, similarly characterized the relief contained in the proposed decree as "injunctive." 606 F. 2d., at 423.

its practical effect was to deny them the permanent injunction sought in their summary-judgment motion. Although the District Court order seemed to fit within the statutory language of § 1292 (a)(1), petitioners' contention was rejected because they did not show that the order might cause them irreparable consequences if not immediately reviewed. The motion for summary judgment sought permanent and not preliminary injunctive relief and petitioners did not argue that a denial of summary judgment would cause them irreparable harm *pendente lite.* Since permanent injunctive relief might have been obtained after trial,[10] the interlocutory order lacked the "serious, perhaps irreparable, consequence" that is a prerequisite to appealability under § 1292 (a)(1).

Similarly, in *Gardner* v. *Westinghouse Broadcasting Co.,* 437 U. S. 478 (1978), petitioner in a Title VII sex discrimination suit sought a permanent injunction against her prospective employer on behalf of herself and her putative class. After the District Court denied petitioner's motion for class certification, petitioner filed an appeal under § 1292 (a)(1). She contended that since her complaint had requested injunctive relief, the court's order denying class certification had the effect of limiting the breadth of the available relief, and therefore of "refus[ing] a substantial portion of the injunctive relief requested in the complaint." 437 U. S., at 480.

As in *Switzerland Cheese,* petitioner in *Gardner* had not filed a motion for a preliminary injunction and had not alleged that a denial of her motion would cause irreparable harm. The District Court order thus had "no direct or irreparable impact on the merits of the controversy." 437 U. S., at 482.

---

[10] The District Court denied petitioners' motion for summary judgment because it found disputed issues of material fact, not because it disagreed with petitioners' legal arguments. Thus, not only was the court free to grant the requested injunctive relief in full after conducting a trial on the merits, but it was also not precluded from granting a motion for preliminary injunction during the pendency of the litigation if petitioners were to allege that further delay would cause them irreparable harm.

Because the denial of class certification was conditional, Fed. Rule Civ. Proc. 23 (c)(1), and because it could be effectively reviewed on appeal from final judgment, petitioner could still obtain the full permanent injunctive relief she requested and a delayed review of the District Court order would therefore cause no serious or irreparable harm.  As *Gardner* stated:

> "The order denying class certification in this case did not have any such 'irreparable' effect.  It could be reviewed both prior to and after final judgment; it did not affect the merits of petitioner's own claim; and it did not pass on the legal sufficiency of any claims for injunctive relief."  437 U. S., at 480–481 (footnotes omitted).[11]

## III

In the instant case, unless the District Court order denying the motion to enter the consent decree is immediately appealable, petitioners will lose their opportunity to "effectually challenge" an interlocutory order that denies them injunctive relief and that plainly has a "serious, perhaps irreparable, consequence."  First, petitioners might lose their opportunity to settle their case on the negotiated terms.  As *United States v. Armour & Co.,* 402 U. S. 673, 681 (1971), stated:

> "Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms.  The parties waive their right to litigate the issues involved in the case and thus save themselves

---

[11] By contrast, *General Electric Co.* v. *Marvel Rare Metals Co.,* 287 U. S. 430 (1932), a case in which respondents sought to appeal the District Court's dismissal of their counterclaim for injunctive relief on jurisdictional grounds, concluded that the District Court's order *did* have a serious, perhaps irreparable, consequence and that it could not be effectually challenged unless an appeal were immediately taken.  The Court noted that the District Court "necessarily decided that upon the facts alleged in the counterclaim defendants were not entitled to an injunction," *id.,* at 433, and that this decision resolved "the very question that, among others, would have been presented to the court upon formal application for an interlocutory injunction."  *Ibid.*

the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation."

Settlement agreements may thus be predicated on an express or implied condition that the parties would, by their agreement, be able to avoid the costs and uncertainties of litigation. In this case, that condition of settlement has been radically affected by the District Court. By refusing to enter the proposed consent decree, the District Court effectively ordered the parties to proceed to trial and to have their respective rights and liabilities established within limits laid down by that court.[12] Because a party to a pending settlement might be legally justified in withdrawing its consent to the agreement once trial is held and final judgment entered,[13]

---

[12] By refusing to enter the proposed consent decree, the District Court made clear that it would not enter any decree containing remedial relief provisions that did not rest solidly on evidence of discrimination and that were not expressly limited to actual victims of discrimination. 446 F. Supp., at 788–790. In ruling so broadly, the court did more than postpone consideration of the merits of petitioners' injunctive claim. It effectively foreclosed such consideration. Having stated that it could perceive no "vestiges of racial discrimination" on the facts presented, *id.*, at 790, and that even if it could, no relief could be granted to future employees and others who were not "actual victims" of discrimination, *id.*, at 789, the court made clear that nothing short of an admission of discrimination by respondents plus a complete restructuring of the class relief would induce it to approve remedial injunctive provisions.

[13] Indeed, although there has yet been no trial, respondents are even now claiming a right to withdraw their consent to the settlement agreement. After the Court of Appeals dismissed petitioners' appeal and returned jurisdiction to the District Court, respondents filed a motion for a pretrial conference in which they stated: "In support of this motion the defendants assert that they do not now consent to the entry of the proposed Decree . . . ." App. 67a. Neither the District Court nor the Court of Appeals has yet considered whether respondents' statement constitutes a formal motion to withdraw consent or whether such a with-

the District Court's order might thus have the "serious, perhaps irreparable, consequence" of denying the parties their right to compromise their dispute on mutually agreeable terms.[14]

There is a second "serious, perhaps irreparable, consequence" of the District Court order that justifies our conclusion that the order is immediately appealable under § 1292

---

drawal would be legally permissible at this point in the litigation, and we therefore do not decide those issues.

[14] Furthermore, such an order would also undermine one of the policies underlying Title VII. In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims. As explained in *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 44 (1974):

"Congress enacted Title VII . . . to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. . . . Cooperation and voluntary compliance were selected as the preferred means for achieving this goal."

Moreover, postjudgment review of a district court's refusal to enter a proposed consent decree raises additional problems. Not only might review come after the prevailing party has sought to withdraw its consent to the agreement, but even if the parties continued to support their decree, the court of appeals might be placed in the difficult position of having to choose between ordering the agreed-upon relief or affirming the relief granted by the trial court even when such relief rested on different facts or different judgments with respect to the parties' ultimate liability.

In addition, delaying appellate review until after final judgment would adversely affect the court of appeals' ability fairly to evaluate the propriety of the district court's order. Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. See *Protective Comm. for Independent Stockholders* v. *Anderson*, 390 U. S. 414, 424–425 (1968). They do not decide the merits of the case or resolve unsettled legal questions. Since the likely outcome of a trial is best evaluated in light of the state of facts and perceptions that existed when the proposed consent decree was considered, appellate review would be more effective if held prior to the trial court's factfinding rather than after final judgment when the rights and liabilities of the parties have been established.

(a)(1). In seeking entry of the proposed consent decree, petitioners sought an immediate restructuring of respondents' transfer and promotional policies. They asserted in their complaint that they would suffer irreparable injury unless they obtained that injunctive relief at the earliest opportunity.[15] Because petitioners cannot obtain that relief until the proposed consent decree is entered, any further delay in reviewing the propriety of the District Court's refusal to enter the decree might cause them serious or irreparable harm.[16]

In sum, in refusing to approve the parties' negotiated consent decree, the District Court denied petitioners the opportunity to compromise their claim and to obtain the injunctive benefits of the settlement agreement they negotiated.

---

[15] In the "Relief" section of their complaint, petitioners alleged:

"Plaintiffs and the class they represent have suffered and will continue to suffer irreparable injury by the policies, practices, customs and usages of the defendants complained of herein until the same are enjoined by this Court. Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for a preliminary and permanent injunction and declaratory judgment is their only means of securing adequate relief.

"WHEREFORE, plaintiffs pray that this Court advance this case on the docket, order a speedy hearing at the earliest practicable date, and upon such hearing, to:

"1. Grant plaintiffs and the class they represent a preliminary and permanent injunction enjoining the defendants and their agents, successors, employees, attorneys, and those acting in concert with them and at their direction from continuing to maintain policies, practices, customs or usages of limiting plaintiffs and members of their class to the lower-paying and less desirable jobs, denying them on-the-job training opportunities, denying them the opportunity to advance to supervisory positions, denying them fringe benefits afforded other employees of the Company, and denying them adequate and effective union representation because of their race and color." App. 9a–10a.

This is essentially the relief that petitioners would have obtained under the proposed consent decree.

[16] For example, petitioners might be denied specific job opportunities and the training and competitive advantages that would come with those opportunities.

These constitute "serious, perhaps irreparable, consequences" that petitioners can "effectually challenge" only by an immediate appeal. It follows that the order is an order "refusing" an "injunctio[n]" and is therefore appealable under § 1292 (a)(1).

*Reversed.*