Donald L. BACHMAN, et al., Plaintiffs,

v.

James C. MILLER, III, Defendant.

Civ. A. No. 76–0079.

United States District Court,
District of Columbia.

Nov. 3, 1982.

Roderic V.O. Boggs, Roger E. Warin, Washington, D.C., for plaintiffs.

John Oliver Birch, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### BACKGROUND

The case of *Bachman v. Pertschuk*[1] resulted in the most far reaching affirmative action program ever developed for professional people. Before this Court, plaintiffs, minority professional persons, sought to vindicate themselves from perceived discrimination at the Federal Trade Commission ("FTC"). The matter was resolved in the form of a settlement agreement that was approved by the Court on April 25, 1978.

The settlement agreement[2] provided for a broad plan to ensure against discrimination at the FTC in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. The settlement also provided a post-settlement procedure for resolution of individual claims. Any class member who believed himself or herself to be the victim of discrimination could submit a claim to the Administrator of the settlement who was empowered to grant relief. If the claimant remained unsatisfied, she/he could appeal the Administrator's decision to a United States Magistrate. By consent of parties and in full compliance with the notice and comment requirement of Rule 23 of the Federal Rules of Civil Procedure the decision of the Magistrate was to be the final and unappealable disposition of the claim.

This matter is before the Court on the motion of three members of the plaintiff class ("Movants") to vacate the portion of the settlement agreement making the Magistrate's decision unappealable.[3] Movants aver that this portion of the settlement should be vacated because it denies them their constitutional right to have their claims heard by an Article III Judge, which right they claim was neither waived nor waivable. Movants further allege that they did not receive adequate notice. They thus conclude that this Court has a "right and a duty" to vacate the no-appeals clause of the settlement under both the agreement itself and Fed.R.Civ.P. 60(b). The Court does not find merit in Movants' arguments and for the reasons set forth herein will deny Movants' Motion.[4]

### ANALYSIS

#### Point I

#### MOVANTS WERE NOT DENIED THE RIGHT TO AN ARTICLE III FORUM

Movants first allege that they have an unwaivable right to have their claims of discrimination heard by an Article III Judge. They aver that the claims procedure established by the settlement agreement denies them this right because it makes the Magistrate's ruling final and unappealable. However, this argument misapprehends the purpose of the settlement agreement and the post-settlement claims process that it establishes.

1. The name was changed to *Bachman v. Miller* when James Miller replaced Michael Pertschuk as head of the FTC.

2. The Settlement Stipulation and Order approved by this Court on April 25, 1978 is attached hereto and incorporated herein for convenient reference. [Omitted from published opinion—Editor.]

3. Movants are 3 Black attorneys—Wanda Foster, Dalton Howard and Terrence Willingham—who applied for positions with the FTC but were not hired.

4. Movants first attempted to appeal directly to the Court of Appeals for the District of Columbia Circuit. That Court rejected their claim finding that it was not properly before the Court. *Bachman v. Pertschuk*, No. 81–1906 (D.C.Cir., Feb. 6, 1982) (Mem.).

On July 29, 1976 this Court certified a class consisting of a large group of individuals who alleged that they had been discriminated against by the FTC. Movants were clearly within the class certified by this Court. Thus, any claim of discrimination that they had against the FTC was disposed of in the final resolution of this case. That final resolution came in the form of a settlement agreement.[5] *See Gendron v. Shastina Properties Inc.,* 578 F.2d 1313, 1315 (9th Cir.1979) (settlement constitutes final disposition of the case). From the time of the approval of the settlement by this Court, any claim of discrimination Movants may have had against the FTC was *res judicata* —the settlement agreement itself finally disposed of Movant's claims.

To ensure that each individual would have an opportunity to be heard, the settlement agreement provided an *additional* remedy—an individual claims procedure.[6] Movants each filed a claim under this procedure with the Administrator of the settlement. Upon denial of their claims, they appealed to a United States Magistrate (as the stipulation provided) who also found that their claims lacked merit. When Movants brought their claims before the Administrator and then the Magistrate, their requests for relief arose under the settlement agreement. Their claims were no longer

Title VII claims because the Movants' rights under Title VII were fully and finally resolved in the settlement agreement, entered into in an Article III forum and approved by an Article III Court. Thus, Movants' allegation that they have a right to have their additional individual claims heard by an Article III Judge must fail and it is unnecessary for the Court to consider whether such a right is waivable or was waived by Movants here.[7]

Point II

## ADEQUATE NOTICE WAS PROVIDED TO MOVANTS AS MEMBERS OF THE .PLAINTIFF CLASS

■ Movants also argue that they did not receive adequate notice and thus were not aware that when they submitted their claim to the Administrator they could not appeal to an Article III Court.[8] Although this allegation appears in the context of Movants' argument that there could be no waiver of their rights to an Article III Judge because they were not under notice, the Court will address the issue in its own right because it goes to the heart of the question of whether Movants should properly be bound by the settlement agreement.

On January 17, 1978 this Court conditionally approved the settlement agreement submitted by the parties in *Bachman.* On

---

**5.** The settlement became final and unappealable when no appeal was taken within the 60 day period provided by Rule 4(a) Fed.R.App.P. *See Browder v. Director, Department of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978) (time period for appeal is jurisdictional).

**6.** If the settlement had provided that each plaintiff was entitled to receive $5, that provision would have constituted a final disposition of Movants' claims and they could not be heard to complain that they were denied their right to an Article III forum. Here, each plaintiff was given an extra opportunity to assert an individual claim. This opportunity was not in contravention of their constitutional rights. In fact, they had already received everything to which they were constitutionally entitled. Rather, this opportunity was additional relief provided by the consent of the parties.

**7.** Movants' request that the Court set aside a "portion" of the settlement would deprive defendant nearly completely of the benefit it

hoped to achieve through class settlement—release from the expense of defending against, and potential liability in, numerous individual suits over a long period of years at great expense to the litigants and the Judiciary and its inadequate resources. To do as plaintiffs urge would bring about a greatly disfavored result since it is widely recognized that settlement, especially of Title VII suits, is to be encouraged. *See Carson v. American Brands,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998 n. 14, 67 L.Ed.2d 59 (1981).

**8.** The Court is not entirely convinced that Movants, all practicing attorneys, could reasonably have assumed that they were free to fully utilize the claims procedure provided in the settlement and then pursue their claims further to an Article III forum if they were dissatisfied with the result. It would be a strange class settlement indeed that purported to resolve the issues presented and yet allowed each individual class member to pursue a separate suit.

February 2, 1978 the Court ordered that notice of the proposed settlement and its terms be disseminated to the plaintiff class. Pursuant to this Order, notice was mailed to all known plaintiffs. Additionally, notice was published in a number of newspapers and journals for a period of weeks in an attempt to notify class members that the Court recognized "may be difficult to identify and/or locate (*e.g.*, rejected applicants)."

Notice to the class was provided pursuant to Fed.R.Civ.P. 23(a). Rule 23(e) provides that notice of a proposed "compromise shall be given to all members of the class in such a manner as the Court directs." By its terms, Rule 23(e) vests broad discretion in the court to determine what constitutes adequate notice. *See* C. Wright & A. Miller, Federal Practice & Procedure § 1799 at 237. Moreover, publication has been widely recognized as a proper method of notice for class members who cannot reasonably be individually identified and/or located.[9] *See e.g., Mendoza v. United States,* 623 F.2d 1338, 1351 (9th Cir.1980) *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *Luevano v. Campbell,* 93 F.R.D. 68 (D.D.C.1981); *Quigley v. Braniff Airways, Inc.,* 85 F.R.D. 74, 77 (N.D.Tex.1979). Thus, the Court concludes that adequate notice was provided to the plaintiff class and the FTC did not "default in providing movants with proper notice," as movants allege.

In light of the Court's rejection of Movants' claims, it is unnecessary to consider whether the Court has the power to grant Movants the relief they requested either under the terms of the settlement agreement or Fed.R.Civ.P. 60(b).

An Order consistent with foregoing will be issued of even date herewith.

**9.** Movants were among a group of approximately 25,000 to 35,000 individuals who unsuccessfully applied for positions as attorneys with the FTC. Given the size of this group it is not difficult to understand why Movants were not individually identified and noticed.

Additionally, the Court notes that publication was a method of notice particularly well suited to bringing this matter to Movants' attention because all of them were practicing attorneys in the Washington area at the time of the settlement. In addition to the published notices, the settlement received considerable press coverage which further increased the likelihood that Movants would be, or were alerted to the fact of the settlement.