**Steven S. SCHOLES, Receiver, et al., Plaintiffs,**

**v.**

**STONE, McGUIRE & BENJAMIN, et al., Defendants.**

**No. 90 C 7201.**

United States District Court, N.D. Illinois, E.D.

Dec. 21, 1993.

Gary L. Prior, Paul J. Kozacky, Richard Lawton Sandler, Mary B. Tribby, Mark Thomas Ostrowski, McDermott, Will & Emery, P.C., Jerrold E. Salzman, Phillip Leon Stern, Sherman Paul Marek, Robert P. Scales, Freeman, Freeman & Salzman, P.C.,

James A. Davids, Hoogendoorn, Talbot, Davids, Godfrey & Milligan, Chicago, IL, for plaintiffs.

Howard Michael Pearl, Dan K. Webb, Catherine W. Joyce, Donald Joseph Mizerk, Marie A. Lona, Winston & Strawn, Daniel J. Pope, Seyfarth, Shaw, Fairweather & Geraldson, Richard Harney Donohue, Karen Kies DeGrand, Donald J. Hayden, Jane M. McFetridge, Baker & McKenzie, Philip L. Harris, Kirkland & Ellis, Carson P. Veach, Daniel J. Pope, Debra Ann Winiarski, Mark Lee Shaw, James L. Curtis, Alexander S. Vesselinovitch, Helen Katharine Whatley, Seyfarth, Shaw, Fairweather & Geraldson, Eugene J. Frett, Stephen J. Spitz, David J. Seery, Sperling, Slater & Spitz, P.C., Chicago, IL, for defendants.

Jeannette Lisa Lewis, U.S.S.E.C., Chicago, IL.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

In this action, a Receiver for Michael S. Douglas ("Douglas"), D & S Trading Group, Ltd. ("D & S"), Analytic Trading Systems, Inc. ("AT Systems"), Analytic Trading Service, Inc. ("AT Service"), and Market Systems, Inc. ("MSI") and a certified class of plaintiffs brought claims against defendants Stone, McGuire & Benjamin ("SMB"), Howard L. Stone ("Stone") and Michael L. Siegel ("Siegel") (collectively "the SMB defendants") and Rosenthal & Schanfield, P.C., William P. Rosenthal and Leslie J. Weiss ("the R & S defendants") arising from fraud perpetrated by Douglas. The extensive facts of the case are set out in prior opinions of this court. *See Scholes v. Stone, McGuire & Benjamin*, 786 F.Supp. 1385, 1387-92 (N.D.Ill.1992) (disposition on motion to dismiss). Also currently pending before Judge Norgle of this court, is the related case entitled *Agnes v. Weis*, No. 91 C 5880 ("the *Agnes* case"), involving numerous plaintiffs against the SMB defendants and the R & S defendants based on the same facts. After three years of litigation, all plaintiffs in this case and the *Agnes* case have reached a proposed settlement agreement with the SMB defendants. Under the Settlement Agreement, plaintiffs will be paid $2.9 million from an insurance policy issued by CNA, the insurance carrier for the SMB defendants. One of the many provisions of the settlement agreement requires that the court bar any claims for contribution the R & S defendants may ultimately have against the SMB defendants. The R & S defendants object to this provision. Presently before this court is the class plaintiffs' Motion for Final Approval of Settlement.

On November 15, 1993, this court held a hearing at which all class members were given an opportunity to object to the proposed settlement and at which the R & S defendants were given an opportunity to object to the provision barring all contribution claims. No class member objected to the terms of the settlement. R & S presented no witnesses in support of their objections. R & S did, however, submit voluminous written materials in opposition to the settlement agreement.

The court has examined all the materials submitted by the parties. Among the factors which the Court considered in judging the fairness of the proposed Settlement Agreement are the following:

(1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement;

(2) the defendant's ability to pay;

(3) the complexity, length and expense of further litigation;

(4) the amount of opposition to the settlement;

(5) the presence of collusion in reaching a settlement;

(6) the reaction of members of the class to the settlement;

(7) the opinion of competent counsel; and

(8) the stage of the proceedings and the amount of discovery completed.

*Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir.1980) (discussing "[d]istrict court review of a class action settlement proposal." and noting that the first factor, the strength of plaintiffs' case on the merits balanced against the settlement offer,

is generally regarded as the most important). After reviewing all relevant evidence of all the parties, the court made the following findings of fact and conclusions of law. For the following reasons, the class plaintiffs' Motion for Final Approval of Settlement is granted.

## FINDINGS OF FACT

### I. Matters Considered/Evidentiary Rulings

1. In considering whether the Settlement Agreement should be approved as required by its terms, the Court has considered the entire record in this case, including all of the submissions by the parties with respect to Plaintiffs' Motion for Final Approval; the financial information submitted by the Settling Defendants *in camera* as required by this Court on November 11, 1993; and the information submitted by the R & S defendants *in camera* with respect to the terms of a proposed settlement of the claims against Leslie Weiss and Rosenthal & Schanfield, P.C. in the *Agnes* case. Furthermore, this Court is substantially familiar with this case based on its involvement in numerous hearings, class certification, contested motions, pretrial conferences, and settlement conferences.

2. The Court also has taken into account the views of the Securities Exchange Commission (the "SEC"). At the fairness hearing on November 15, 1993, Laura Ramsey, an attorney representing the SEC, appeared and advised the Court that the staff of the SEC believes that final approval should be given to the Settlement Agreement in accordance with its terms.

3. Each of plaintiffs, the Settling Defendants and the R & S Defendants submitted voluminous materials in connection with the motion for final approval of the Settlement Agreement. The R & S Defendants contend that a limited number of the materials submitted by plaintiffs may not be admissible at a trial on the merits. In deciding whether final approval should be given to the Settlement Agreement, the Court considered the evidentiary objections asserted with respect to these materials, together with the representations by each of the parties who submit-

ted them to the effect that these materials: (a) reflect the record developed during the course of this and related litigation; and (b) constitute the factual bases upon which plaintiffs and the Settling Defendants considered, evaluated, and agreed to the Settlement Agreement, and upon which the R & S Defendants object to the entry of a settlement bar order as called for in the Settlement Agreement.

4. These findings and conclusions are made for the purposes of deciding whether the Settlement Agreement should receive final approval and whether a settlement bar order should be entered. The Court is not ruling on the admissibility of any evidence which may be proffered at a trial, or making any other findings or conclusions. *See Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998–99 n. 14, 67 L.Ed.2d 59 (1981) (when determining the fairness of a proposed compromise, the court does not "decide the merits of the case or resolve unsettled legal questions").

5. None of the parties proffered any witnesses at the hearing conducted on November 15, 1993, and each party stated its intention to rest on its written submissions notwithstanding the Court's order permitting witnesses to be called.

6. The opinion of Class counsel to the effect that the Settlement Agreement is fair, reasonable, and adequate has been considered by the Court only insofar as it discharges the obligations of counsel under Rule 23 of the Federal Rules of Civil Procedure. The Court finds that Class counsel is competent and experienced in these matters, based in part on the Court's observations during the course of this litigation. In making the findings set forth herein with respect to whether the Settlement Agreement should be approved and whether a settlement bar should be entered, the Court has made its own independent analysis and evaluation of the entire record.

### II. Fairness Under Rule 23 of the Federal Rules of Civil Procedure

7. The Settling Defendants deny all liability in this action and in the *Agnes* case.

8. The continuation of this litigation between plaintiffs and the Settling Defendants would be very costly. The Settlement Agreement will expedite the trial of this matter and save substantial time, expense, and jury confusion. Plaintiffs will not be required to present evidence to establish liability against the Settling Defendants and counsel for the Settling Defendants will not present opening or closing statements, question witnesses, or present any defense.

9. As of the time the Settlement Agreement was entered, the parties to the agreement did not know when this case would be scheduled for a trial on the Court's calendar. Given the Court's calendar and the prospect of an appeal, the parties reasonably anticipated then that, absent settlement, the final disposition of the case would not occur for several years.

10. There are numerous contested factual issues between the settling parties.

11. SMB has filed a summary judgment motion as to all counts of the Complaint and continues to deny all liability. Apart from the evidence, many of the legal theories upon which plaintiffs base their complaint against the Settling Defendants are of questionable viability and subject to challenge. For instance, plaintiffs' theory that misleading regulators, specifically the Securities and Exchange Commission, constitutes a violation under Rule 10b–5 has not been addressed by the United States Supreme Court and has been disapproved of by the Seventh Circuit. *See Renovitch v. Kaufman*, 905 F.2d 1040, 1043 n. 5 (7th Cir.1990). In addition, the United States Supreme Court presently is considering the question of whether there is a private right of action for aiding and abetting liability under section 10(b) and Rule 10b–5 actions. *See Central Bank v. First Interstate Bank*, —— U.S. ——, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993) (granting petition for writ of certiorari). In addition, as evidenced by the motions filed by both the SMB and the R & S defendants, there are many contested legal issues raised by plaintiffs' state law claims.

12. The Settlement Agreement requires the Settling Defendants to pay at least 80 percent of their available insurance coverage. Moreover, the Settling Defendants' insurance policy is "self-consuming"; since defense costs and expenses reduce the amount of coverage, continuing the litigation against the Settling Defendants will reduce the amount of insurance coverage available to satisfy any judgment which may be entered against the Settling Defendants.

13. The Settling Defendants' insurance policy excludes coverage for claims based upon "any dishonest, fraudulent, criminal, or malicious act or omission." Since the complaint alleges certain claims against the Settling Defendants based upon fraud and other intentionally dishonest misconduct, the Settling Defendants' insurance carrier may be able to assert coverage defenses in the event that plaintiffs succeed in obtaining a judgment against the Settling Defendants, thus raising the specter that insurance proceeds will be limited to satisfy any judgment.

14. Numerous uncertainties with respect to plaintiffs' ability to obtain a favorable result against the Settling Defendants were created by the pendency of the *Agnes* case in which opt-outs from the class certified in this case are pursuing individual claims against the Settling Defendants. Among other things, the pendency of the *Agnes* case raised the possibility that the rights of the plaintiffs in this case would be affected adversely by an adverse decision in the *Agnes* case, and that the amount of available insurance proceeds would be depleted by a settlement or disposition of the *Agnes* case. Also, this Court observed that settlement negotiations were made more difficult by the pendency of the *Agnes* case as the Settling Defendants refused to settle this case without simultaneously settling the *Agnes* case and thereby eliminating the possibility of substantial exposure in the *Agnes* case.

15. Discovery in this case is completed. As such, all parties are able to proceed with full disclosure of all the facts and evidence that will be offered at a trial on the merits. Furthermore, the parties to the Settlement Agreement were in possession of the facts, evidence, and issues at the time they entered into the Settlement Agreement.

16. Settlement negotiations were carried out over a period of approximately eight months. This court participated in reaching the Settlement Agreement by presiding over two separate settlement conferences which led to the proposed Settlement Agreement.

17. Settlement negotiations were conducted at arms' length, and in good faith. No evidence has been adduced suggesting that the Settlement Agreement is the product of collusion, or that it was not entered in good faith.

18. A trial against the R & S Defendants alone will simplify this matter and make it less costly. In addition to the many complex legal and factual issues related to the merits of the case, the Settling Defendants are represented by experienced and well-qualified counsel who have defended this case vigorously, and who are capable of continuing to do so through trial and appeal.

19. The Settlement Agreement will reduce the litigation risks in a trial against the R & S Defendants who, among other things, have substantially greater insurance coverage than the Settling Defendants and, as set forth below, appear to have greater relative culpability than the Settling Defendants.

20. No objections to the Settlement Agreement have been made by any member of the Class. No Class members appeared at the November 15, 1993 hearing.

21. As noted above, the staff of the SEC has expressed its opinion that the Settlement Agreement is fair and should receive final approval from this Court. *See Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1178 (9th Cir.1977) (support of government agency protects interests of class members).

### III. *Additional Findings With Respect to Settlement Bar*

22. The amount required to be paid under the Settlement Agreement fairly represents the Settling Defendants' proportionate share of fault for the conduct and circumstances giving rise to the claims asserted in the complaint.

23. Plaintiffs' case against the R & S Defendants is substantially stronger than their case against the Settling Defendants for each of the following reasons, among others, which appear from the record:

A. The more extensive involvement of the R & S Defendants in the matters alleged to give rise to the claims asserted;

B. The evidence with respect to the R & S Defendants' representation of D & S, AT Systems, AT Service, MSI, Presidential Aircraft, Inc., D & D Auto Investments, Inc., and Waveland Group, Ltd., contrasted with the Settling Defendants' denial that they represented any of the Douglas entities prior to the institution of the SEC's civil enforcement action;

C. The R & S Defendants' preparation of one or more documents used by Douglas or which facilitated the continuation of his fraudulent scheme, and their alleged input or involvement with respect to other such documents;

D. The greater familiarity of investors with the alleged role of the R & S Defendants and their reliance on the R & S Defendants, as contrasted with their lack of knowledge with respect to the alleged participation of the Settling Defendants; and

E. Plaintiffs' claims that the R & S defendants committed a primary violation of section 10(b) and Rule 10b–5 based on the Rosenthal defendants' preparation of various documentation used by Michael Douglas in his fraud and the lack of similar allegations against the Settling Defendants.

24. The foregoing findings with respect to the relative culpability of the Settling Defendants are supported by the positions taken by the R & S Defendants in this case. At a September 8, 1993 hearing, Daniel Pope, counsel for the R & S Defendants, made the following statement after he summarized the Magistrate Judge's finding that SMB allegedly intentionally and knowingly assisted Douglas in evading SEC regulators: "Now, I don't think there is a bit of proof, mind you, to prove any of that." Transcript of Proceeding, September 8, 1993, at p. 15. This statement was made after the completion of discovery by an attorney who has participated in the entirety of these proceedings and who is familiar with the record in this case.

25. Daniel Pope also has submitted an affidavit in support of the R & S Defendants' opposition to the motion for final approval of the Settlement Agreement ("Daniel Pope affidavit") in which he again stated his opinion that plaintiffs' claims against the Settling Defendants (as well as against the R & S defendants) are without merit. In paragraph 10 of his affidavit, Mr. Pope describes the allegations as being "false," ". . . . insulting and without basis in fact."

26. A purported expert witness offered by the R & S Defendants opined that the actions of the Settling Defendants (as well as the R & S defendants) were reasonable, proper and courageous. Rotunda Dep.Tr. 205, 219, 255. The SMB defendants also proffered expert witnesses who testified that the actions of SMB were proper.

27. No claims for contribution have been asserted by the R & S Defendants. Nevertheless, paragraph 10 of Daniel Pope's affidavit contrasts the strength of the R & S Defendants' purported contribution claims, with his assessment that plaintiffs' claims against the Settling Defendants lack any factual or legal basis.

28. The foregoing findings with respect to the relative culpability of the Settling Defendants, including those based on the statements made by Daniel Pope with respect to the absence of a legal or factual basis for the plaintiffs' claims against the Settling Defendants, the court's finding that the settlement agreement was reached in good faith, and the court's review of the R & S defendants' description of their purported contribution claims support the entry of a settlement bar order. See Rufolo v. Midwest Marine Contractor, 6 F.3d 448 (7th Cir.1993). This Court previously has rejected the R & S Defendants' argument to limit the applicability and reasoning of Rufolo to admiralty cases.

29. In addition, the R & S Defendants' in camera submission with respect to the tentative settlement struck by them with the plaintiffs in the Agnes case undermined somewhat Daniel Pope's opinion with respect to the relative culpability of the Settling Defendants and the R & S Defendants, as stated in his affidavit. That submission indicates that the R & S Defendants are paying to the plaintiffs in the Agnes case substantially more than the $1.3 million those plaintiffs will receive from the Settling Defendants under the Settlement Agreement. The settlement in the Agnes case was made after the Settlement Agreement was disclosed to the R & S Defendants. The settlement in the Agnes case, therefore, is inconsistent with the R & S Defendants' position that they are less culpable than the Settling Defendants. Moreover, Daniel Pope previously has stated in open court that the R & S Defendants are willing to settle with plaintiffs on the same basis as the Settling Defendants. Transcript of Proceedings, January 19, 1993 at p. 6 ("[T]he Stone, McGuire firm is being let out for a certain figure. We have agreed to match that."); Id. at p. 12 ("We have offered to match whatever the Stone, McGuire settlement is . . . .").

30. Paragraph 6 of Daniel Pope's affidavit states that the actual insurance coverage available to the Settling Defendants "may" exceed the remaining limits available under their policy because of an alleged bad faith failure to settle by the insurer for the Settling Defendants. However, any conceivable claim with respect to the alleged bad faith of the Settling Defendants' insurer is made irrelevant by plaintiffs' acceptance of the Settling Defendants' settlement offer below the policy limits as evidenced by the Settlement Agreement.

31. The R & S Defendants argued that they were put in the "untenable position" of having to attack a settlement agreement when they were excluded from the settlement discussions that took place before the court. This circumstance has been taken into account by the court but has little probative value. See Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co., 834 F.2d 677, 684 (7th Cir.1987) (recognizing the "clumsy" nature of three-cornered negotiations and acknowledging the limited value of conclusory statements made by interested parties, not privy to settlement negotiations, that the settlement was conducted in bad faith).

32. The SMB defendants submitted financial affidavits *in camera*, showing the net worth of SMB, of Stone and of Siegel, respectively. These documents demonstrate that the SMB defendants have the ability to satisfy a judgment in excess of the policy limits of their insurance policy. The court has taken into account these affidavits, as well as the fact that the parties have agreed to settle for below the policy limit.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation, and over all parties to this litigation, including all members of the Class.

2. The court finds that the Settlement Agreement is a compromise of disputed claims and is not an admission of liability by the settling defendants.

3. The parties have agreed that neither the Settlement Agreement, the fact of settlement, nor the settlement negotiations between plaintiffs and the Settling Defendants, shall be used or construed as an admission of any fault, liability, or wrongdoing by any person.

4. The parties have agreed that neither the Settlement Agreement, the fact of settlement, the findings of fact and conclusions of law set forth herein, nor the settlement negotiations between plaintiffs and the Settling defendants, shall be offered or received in evidence as an admission, concession, presumption or inference against any of the parties to the Settlement Agreement in any proceeding other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement.

■ 5. The settlement of the matters in controversy between the members of the Class and the Settling Defendants on the terms and conditions set forth in the Settlement Agreement hereby is approved pursuant to Rule 23 of the Federal Rules of Civil Procedure as fair, reasonable, and adequate, and said settlement shall be consummated as provided in the Settlement Agreement. *See Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980).

6. The Settlement Agreement has been negotiated at arms' length and entered into and made in good faith, without collusion. The Rosenthal defendants have not produced any evidence that the Settlement Agreement was entered in bad faith or that the Settlement Agreement was a product of collusion among the parties. Furthermore, the amount of a settlement may simply reflect the strength or weakness of the plaintiff's case against a settling defendant. *See Rufolo v. Midwest Marine Contractor*, 6 F.3d 448, 452 (7th Cir.1993). This Court has found that the *pro tanto* method of settlement reduction is appropriate in this case. *Rufolo*, 6 F.3d 448. Because this Court has found that the Settlement Agreement was entered into in good faith, the court approves of the contribution bar provision excusing the Settling Defendants from all contribution liability. *Rufolo*, 6 F.3d at 452.

■ 7. The Notice given to the Class of the settlement as set forth in the Settlement Agreement and the other matters set forth therein was the best notice practicable under the circumstances. The Notice provided fair and reasonable notice to the members of the Class concerning the nature of these actions and the claims and causes of action asserted therein on behalf of the Class, and the proposed settlement and hearing with respect thereto. The Notice also provided due and adequate notice of proceedings with respect to the settlement and of all matters set forth in the Notice to all persons entitled to receive notice. The Notice fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution.

8. All persons and entities who validly requested exclusion from the Class are not members of the Class.

9. The complaint and the claims and causes of actions asserted by plaintiffs and the members of the Class contained therein are dismissed with prejudice only against defendants Stone, McGuire & Benjamin, Howard L. Stone, and Michael L. Siegel; provided, however, that this dismissal shall be without prejudice to the rights of each of the plaintiffs and the members of the Class

to reassert each and all of those claims in the event that the Settlement Agreement does not become final and binding in accordance with its terms.

 10. Pursuant to the prior decision of this Court to apply the rules set forth in *Rufolo v. Midwest Marine Contractor,* 6 F.3d 448 (7th Cir.1993), entry of a settlement bar under all of the circumstances is fair to the R & S Defendants, and any damage award that may be entered against them and in favor of plaintiffs shall be reduced by the amount that the Settling Defendants agreed to pay to plaintiffs under the Settlement Agreement. Accordingly, all claims, however denominated, regardless of the allegations, facts, law, theories or principles on which they are based, including, but not limited to, claims for contribution or indemnity, against any or all of Stone, McGuire & Benjamin, Howard L. Stone, and Michael L. Siegel, by any or all of Rosenthal & Schanfield, P.C., William P. Rosenthal, and Leslie J. Weiss, or by anyone claiming by, through or under any or all of them, including, but not limited to, any present or former partner or sharehold-er of Rosenthal & Schanfield, P.C. or of any predecessor or successor law firm, which claims now exist or have accrued, or which may exist or accrue in the future, and which, in whole or in part, arise out of or are in any way related to the claims alleged in the complaint or to the subject matter of those claims, or which, in whole or in part, arise out of or are in any way related to the matters alleged in the complaint, are extinguished, discharged, satisfied, and/or otherwise unenforceable.

11. Nothing contained herein shall be construed, nor is anything intended, to release, discharge, waive, or otherwise prejudice or impair in any way whatsoever, the claims or causes of action that any or all of plaintiffs or any other member of the Class has or might have against any person or entity other than the Settling Defendants, including, but not limited to, the claims alleged in the complaint against Rosenthal & Schanfield, P.C., William P. Rosenthal, and Leslie J. Weiss.

12. No costs shall be taxed against any of the parties to the Settlement Agreement; provided, however, that this paragraph shall be of no further force and effect in the event that claims are asserted against any or all of the Settling Defendants by any or all of the plaintiffs or by the other members of the Class under the circumstances permitted in paragraph 9, above.

13. A separate order or orders shall be entered with respect to the petitions for an award of attorneys' fees and expenses for counsel for plaintiffs. Such order or orders shall not disturb or affect any of the terms hereof.

14. This action shall remain pending and open and the Court shall retain jurisdiction over all issues relating to: (a) the Settlement Agreement; (b) the pending and undetermined claims against the R & S Defendants; and (c) any claims, actions, or causes of action that plaintiffs may bring before the Court which relate to or arise out of this action or to the matters which gave rise to this action.

15. All claims against defendants Howard L. Stone, Michael L. Siegel, and Stone, McGuire & Benjamin are dismissed with prejudice.