ADAMS & BOYLE, P.C., d/b/a The Women's Center, on behalf of themselves and patients seeking pregnancy terminations, Plaintiffs–Appellees,

v.

TENNESSEE DEPARTMENT OF HEALTH, et al., Defendants–Appellants.

No. 99–5792.

United States Court of Appeals, Sixth Circuit.

Feb. 9, 2001.

Before MERRITT, KENNEDY, and GILMAN, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiffs, Drs. Adams and Boyle and Adams & Boyle, P.C., d/b/a The Women's Center, a private physician's office performing abortions, filed this action against the Tennessee Department of Health on behalf of themselves and their abortion-seeking patients. The complaint requested that the district court issue a temporary restraining order (TRO) prohibiting the Department from enforcing the license and certificate of need requirements of the Tennessee Health Planning and Resource Development Act of 1987, codified at Tenn. Code Ann. §§ 68–11–106, –201, 204 (1996), until the hearing of plaintiffs' motion for a preliminary injunction, a period of ten days. Plaintiffs sought the TRO on behalf of approximately fifty patients of the Center who were nearing the end of their first trimester and who had appointments at the Center for abortions during the next

ten days, a period in which a state-court injunction enjoining Adams & Boyle and the Center from performing abortions was in effect. Because the women would not be able to reschedule at another clinic prior to the end of their first trimesters, plaintiffs argued, the state-court injunction would effectively prevent the patients from obtaining an abortion, thereby placing an undue burden on their constitutional rights. The district court agreed and granted the TRO for the ten-day period until the motion in federal court for a preliminary injunction was heard. The women with appointments received their scheduled abortions within five days and the State's motion to this court for a stay was dismissed as moot. The State continues its appeal of the TRO, raising two issues: (1) whether the district court erred by failing to abstain given the pending state-court proceeding and (2) whether the district court erred by determining that the patients would suffer irreparable harm if the TRO were not entered and that they were likely to succeed on the merits of their claim. While conceding that the stay is otherwise moot, these issues, it asserts, are justiciable because they are capable of repetition but likely to evade review.

Because the issue of abstention was revisited by the district court in its later opinion granting a preliminary injunction, see *Adams & Boyle, P.C., d/b/a The Women's Center v. Tennessee Dept. of Health,* No. 3:99–0465 (M.D. Tenn. April 14, 2000), in which the district court held that it should have abstained as to Drs. Adams and Boyle and the Center, the issue did not evade review. The issue of whether the state-court injunction would have placed an undue burden on the women scheduled to obtain abortions during the period of the TRO is not sufficiently briefed to be considered here. As with the abstention issue, the issue of whether plaintiffs established that the Act places an

undue burden on women was decided against the plaintiffs when the district court denied the preliminary injunction. Thus, it has not evaded review. Accordingly, we shall dismiss the appeal as moot.

## I.

This dispute arose when the Department filed an action in state court against the Center seeking an injunction, requiring the Center—which had been operating for an extended period of time—to cease performing abortions until it obtained a license and certificate of need as required by the Act. Under the Act, private physicians' offices that perform abortions—such as the Center—must obtain a certificate of need and a license if the number they perform is considered "substantial." On June 7, 1999, the state court granted the Department's request, ordering the Center to discontinue performing abortions until June 24th when it would conduct further hearings on the matter. On June 10th, the state court amended its order, allowing the Center to perform abortions for those women scheduled to receive abortions on June 11th and 12th.

Concerned that the amended order would still prevent approximately fifty women scheduled to have abortions at the Center between the 13th and the 24th from obtaining them, the Center filed suit on behalf of itself and the women, seeking the TRO preventing the Department from enforcing the state-court injunction for the ten days before a scheduled hearing in federal court for a preliminary injunction. It is important to note that the women did not obtain class certification and were not directly involved in the case; rather their interests were represented by the Center. The Center argued that because the women were nearing the end of their first trimesters and there were no other facili-

ties within the area that could accommodate them prior to that time, the state-court injunction amounted to an undue burden. The district court held that it need not abstain from ruling on the request because the women in the plaintiffs' "subclass," as it referred to them, were not defendants or parties in the ongoing state proceedings, agreed that enforcement of the statute and injunction against them was an undue burden, and issued the TRO preventing the Department from enforcing the injunction against the Center in performing abortions on the fifty women. As indicated, the motion for stay was denied as moot.

After the State filed its notice of appeal, the district court conducted further hearings to determine whether it was appropriate to grant a preliminary injunction prohibiting the State from enforcing the contested provisions of the Act. As part of its decision, the district court determined that it should abstain from exercising jurisdiction over the Center and Drs. Adams and Boyle, as their constitutional arguments, at least as those arguments related to the Center, could be heard in the state-court proceeding. Accordingly, it dismissed them from the case. It allowed the women, who at that point had obtained their abortions, to continue on as a "subclass" in the litigation. Although no class was certified, after further hearings, the district court issued an order enjoining the State from enforcing the contested provisions of the Act. That decision is before this court in a separate appeal.

Our decision here is limited to the appeal from the TRO. However, in determining whether this appeal is moot, we are informed by the proceedings in the companion appeal.

## II.

In this appeal, the State raises two issues. Specifically, it argues that the district court should have abstained from exercising jurisdiction over "the Appellees." It also argues that the district court erred in concluding that the women would suffer irreparable harm if the TRO was not granted because, it reasons, the Act does not place an undue burden on women seeking abortions.

### A.

We believe the issue of whether the district court should have abstained from exercising jurisdiction over the Center does not evade review because it was later decided in the State's favor in this very proceeding and is not appealed. The district court reached that conclusion on two occasions. First, in its opinion granting the TRO, it said it would abstain from deciding the claims of Drs. Adams and Boyle and the Center except as those claims related to the "subclass" of women. And second when it dismissed the Center and Drs. Adams and Boyle from the lawsuit in its order allowing the plaintiffs to amend their complaint. The plaintiffs have not appealed those abstention decisions, nor has the State. Consequently, we will not take that issue up here.

If the State is seeking the answer to a different question: whether the district court should have treated the women as a "subclass" of plaintiffs to which it was capable of granting relief, we will not provide it here. That particular question has not been briefed. No class has been certified. There is no one suing as a member of a class. Under those circumstances, we will not undertake to answer it here.

### B.

We reach a similar conclusion with regard to the question of whether the district court erred in determining that the

Center's patients would succeed on the merits of their claim and suffer irreparable harm if the court did not grant the TRO. In forming its argument, the State focused on the Act's effect on women seeking abortions in Nashville, Tennessee, generally. That is, it argued that a woman's right to have an abortion is not unduly burdened by the fact that she must travel some distance to obtain that abortion. Viewed in that light, it concluded that the fact that enforcing the Act may close the Center or prevent it from performing abortions, thereby possibly requiring women to travel to another town to obtain an abortion, does not make it unduly burdensome. Here again, that issue does not evade review nor is it the issue the court was deciding when it granted the TRO.

In granting the TRO, the district court was concerned not with a general undue burden attack on the Act but, rather, with the effect enforcing the state-court injunction would have on the fifty patients. Thus, the question the district court decided was whether enforcement would unduly burden the "subclass" of women who had scheduled abortions at the Center and were nearing the end of their first trimesters. Because neither party briefed this issue, we will not decide it. It is not clear, moreover, given the peculiar circumstances of this case, that a reasonable expectation exists that "the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). If there is not, the issue would be moot. The issue the State has briefed,

namely, whether the statute unduly burdens women in general, was decided in the State's favor in later proceedings in the district court. That issue can be reviewed when the case is decided on the merits.

## III.

■ Because the issues raised by the State will be subject to later review or are moot, we affirm the district court's grant of the TRO.[1]

---

1. We are cognizant of the general rule that the issuance or denial of a TRO is not appealable. *See Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981); *Nutrasweet Co. v. Vit–Mar Enters., Inc.,* 112 F.3d 689, 692 (3d Cir.1997) ("As a general proposition, orders granting or denying temporary restraining orders are unap-

pealable."); *see also* 11A CHARLES ALAN WRIGHT & ARTHUR M. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2962 (2d ed.1987). Because we believe the issues raised are moot and those that may not be moot were insufficiently raised, we choose not to address the question of whether some issues meet an exception to the general rule.