UNITED STATES of America, Plaintiff,

v.

McKINLEY COUNTY, NEW MEXICO, McKinley County Board of Commissioners, Gloria P. Howes, Russell A. King, Earnest C. Becenti, McKinley County Board of Commissioners, Gloria A. Lente, McKinley County Clerk, and Ernest J. Marquez, Director, McKinley County Bureau of Elections, Defendants.

No. CIV–86–0028.

United States District Court, D. New Mexico.

Sept. 24, 1996.

John Kelly, United States Attorney; Deval L. Patrick, Assistant Attorney General; Elizabeth Johnson, Barry Weinberg, Susana Lorenzo–Giguere and Luis Torres, Voting Rights Section, Dept. of Justice, Wash., D.C., for Plaintiff.

James J. Mason, Mason, Isaacson & Macik, PA, Gallup, New Mexico, for Defendants.

## OPINION ORDER

Before BALDOCK, Circuit Judge, CONWAY, Chief District Judge, and MECHEM, Senior District Judge.*

PER CURIAM.

Backed by court-approved consent decrees, Plaintiff United States has kept careful watch over the electoral process of McKinley County, New Mexico, for the past ten years. Plaintiff now asserts that ten additional years of federal intervention into McKinley County's electoral process is warranted due to continuing violations of the Voting Rights Act's minority language assistance requirements. To that end, Plaintiff seeks entry of a "Second Amended Consent Decree and Order." While not outwardly opposing entry of the decree, McKinley County expressly denies any continuing violation of the Voting Rights Act. The court carefully exercises its discretion and denies

---

* This three-judge panel is convened in accordance with 28 U.S.C. § 2284 and 42 U.S.C. § 1973aa–2.

entry of the "Second Amended Consent Decree and Order."

## I.

Plaintiff United States instituted this action in January 1986 against Defendants McKinley County, New Mexico; its Board of Commissioners; and certain named county officials. Plaintiff sought declaratory and injunctive relief to remedy Defendants' alleged violation of the minority language requirements of § 203(c) of the Voting Rights Act. 42 U.S.C. § 1973aa–1a(c). Section 203(c) provides:

> Whenever any ... [covered] political subdivision ... provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable minority group as well as in the English language: *Provided,* That where the language of the applicable minority group is oral or unwritten or in the case of ... American Indians, if the predominant language is historically unwritten, the ... political subdivision is only required to furnish oral instructions, assistance, or other information relating to registration and voting.

42 U.S.C. § 1973aa–1a(c) (emphasis added).

A substantial portion of McKinley County's population consists of Navajo Indians. Due to its large Native American population, McKinley County constitutes a political subdivision subject to the minority language assistance requirements of § 203(c). 28 C.F.R. Part 55 (1995) (Appendix). Plaintiff alleged that Defendants were violating § 203(c) "by failing to furnish, in the Navajo language, oral instructions, assistance, and other information relating to registration and voting."

The parties' joint motion for entry of a "Consent Decree" accompanied Plaintiff's complaint. In February 1986, this court entered the "Consent Decree." Therein, Defendants did not contest, and the court expressly found, that Defendants had "failed to comply fully with the minority language requirements of the Voting Rights Act" (VRA). The court permanently enjoined Defendants from noncompliance with the VRA, and required Defendants to establish a remedial bilingual election program designed to provide Navajo language voters with an equal opportunity to participate in McKinley County's electoral process. The court retained oversight jurisdiction of the county's electoral process for a period of five years. The "Consent Decree" further provided that after five years, Defendants would be entitled to formal dissolution of the decree upon a "sufficient demonstration" that Defendants had achieved the decree's "basic objectives."

In July 1990, the parties submitted a joint motion for entry of a "First Amended Consent Decree and Order." The "First Amended Consent Decree and Order" provided for increased federal regulation and oversight of McKinley County's electoral process. Conspicuously absent from the proposed amended decree, however, was any allegation, admission or proposed finding of a continuing VRA violation in McKinley County. Rather, the decree "provide[d] for additional measures to improve the effectiveness of McKinley County's remedial bilingual election program." In October 1990, this court entered the "First Amended Consent Decree and Order." Like the original "Consent Decree" the "First Amended Consent Decree and Order" was limited in duration to five years and provided for dissolution of the decree upon "sufficient demonstration" that Defendants had achieved the "basic objectives" of the decree.

In December 1995, the parties submitted to this court for entry, *without motion,* a "Second Amended Consent Decree and Order." The "Second Amended Consent Decree and Order" proposes yet more federal regulation and oversight of McKinley County's electoral process for a ten-year period or until 2006. Furthermore, the proposed decree would, for the first time, mandate election procedures pertaining to Zuni language voters. This addition is in response to 1992 amendments to the VRA, which placed the Zuni Indians residing in McKinley County within the purview of § 203(c), *see* 28 C.F.R. Part 55 (1995) (Appendix). Thus, the parties apparently agreed to incorporate into the "Second Amended Consent Decree and Order" remedies designed to give Zuni lan-

guage voters an equal opportunity to participate in McKinley County's electoral process.[1] Notably, however, Plaintiff has never sought to amend the complaint to allege a violation of § 203(c) relating to McKinley County's Zuni population. Moreover, the "Second Amended Consent Decree and Order" lacks any allegation, admission, or proposed finding of a VRA violation in McKinley County related to Navajo or Zuni language voters.

Concerned with these developments, this court set the proposed entry of the "Second Amended Consent Decree and Order" for hearing. The court directed the parties to address with specificity the ongoing VRA violations which justified an additional ten years of federal court supervision over McKinley County's electoral process. On May 3, 1996, this court held a hearing at which Defendants denied any continuing violations of the VRA in McKinley County. Due to cost considerations arising from the threat of complex litigation, however, Defendants did not oppose Plaintiff's requested entry of the "Second Amended Consent Decree and Order." Unconvinced of the existence of any continuing VRA violations in McKinley County related to Navajo language voters, the desirability of encompassing Zuni language voters within the proposed consent decree, or the need after ten years for more federal court supervision over McKinley County's electoral process, this court denied entry of the "Second Amended Consent Decree and Order" on June 3, 1996.

On June 17, 1996, Plaintiff filed an "Unopposed Motion for Reconsideration" asking the court to reconsider its order denying entry of the "Second Amended Consent Decree and Order." For the first time since the court's entry of the "First Amended Consent Decree and Order" six years ago, Plaintiff claims in its motion that "McKinley County has failed to comply with significant provisions of the First Amended Consent Decree, and has failed to conduct its elections in compliance with § 203 of the Voting Rights Act ... and the Fourteenth and Fifteenth Amendments." While the motion is "unopposed," Defendants continue to deny any violation of the VRA in McKinley County. Defendants' court-ordered response to Plaintiff's motion states: "McKinley County has complied substantially, if not fully, with the provisions of the First Amended Consent Decree. Further, it has conducted its elections, in particular its most recent election, in compliance with § 203 of the Voting Rights Act."[2]

## II.

A consent decree is not merely a contract which the court perfunctorily approves upon the parties' request. Entry of a consent decree is a discretionary exercise of judicial power enforceable by contempt. The Supreme Court rejected long ago the argument that "a decree entered upon consent is to be treated as a contract and not as a judicial act." *United States v. Swift & Co.*, 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). A court " 'is not properly a recorder of contracts; it is an organ of government constituted to make judicial decisions, and when it has rendered a consent judgment it has made an adjudication.' " *International Assoc. of Firefighters v. City of Cleveland*, 478 U.S. 501, 538, 106 S.Ct. 3063, 3084, 92 L.Ed.2d 405 (1986) (Rehnquist, J., dissenting) (quoting 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.409[5], at 330–31 (1984)). Accordingly,

1. Zuni language voters presently are the subject of a separate agreement which the parties executed in December 1993, and the Attorney General precleared under § 3(c) of the VRA, 42 U.S.C. § 1973a(c), in February 1994.

2. The court construes Plaintiff's motion for reconsideration as a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e). The court entered its order denying entry of the "Second Amended Consent Decree and Order" on June 3, 1996. Plaintiff filed its motion for reconsideration on June 17, 1996, within the ten day time period prescribed by Rule 59(e). Fed.

R.Civ.P. 6(a) ("When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."). Although not technically a judgment, the court's June 3 order may be considered a denial of injunctive relief immediately appealable under 28 U.S.C. § 1292(a)(1), and thus subject to a Rule 59(e) motion. *See Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) (order refusing to approve consent decree appealable under § 1292(a)(1)).

this court "is *not* obliged to approve every consent decree placed before it." *United States v. State of Colorado,* 937 F.2d 505, 509 (10th Cir.1991) (emphasis added). Parties to a lawsuit "cannot, by giving each other consideration, purchase from a court ... a continuing injunction" in the form of a consent decree. *System Federation No. 91 v. Wright,* 364 U.S. 642, 651, 81 S.Ct. 368, 373, 5 L.Ed.2d 349 (1961); *accord Kasper v. Board of Election Comm'rs,* 814 F.2d 332, 338 (7th Cir.1987) ("A district judge need not lend the aid of the federal court to whatever strikes the two parties' fancy.").

Because entry of a consent decree is a judicial act, the district court must consider whether the proposed decree is an appropriate commitment of judicial resources. *Kasper,* 814 F.2d at 338. The decree must be "fair, adequate, and reasonable," and "not illegal, a product of collusion, or against the public interest." *State of Colorado,* 937 F.2d at 509. A consent decree must remain within the scope of the pleadings and further the objectives of the law sought to be enforced. *City of Cleveland,* 478 U.S. at 525, 106 S.Ct. at 3076-77. Specifically, "any federal decree must be a tailored remedial response to illegality." *League of United Latin American Citizens v. Clements,* 999 F.2d 831, 847 (5th Cir.1993), *cert. denied,* 510 U.S. 1071, 114 S.Ct. 878, 127 L.Ed.2d 74 (1994).

Additional concerns arise where the proposed decree "entangles an arm of the federal government in the administration of another sovereign ... rather than enforcing strictly legal rights." *Evans v. City of Chicago,* 10 F.3d 474, 477-78 (7th Cir.1993) (en banc) (plurality), *cert. denied,* — U.S. —, 114 S.Ct. 1831, 128 L.Ed.2d 460 (1994); *see also Georgevich v. Strauss,* 772 F.2d 1078, 1085 (3d Cir.1985) (en banc) (recognizing district court's "legitimate concerns" over effect of consent decree on federal-state relations), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986). Public officials presumably perform their duties in a manner consistent with law absent "clear evidence to the contrary." *United States v. Chemical Found., Inc.,* 272 U.S. 1, 14-15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). Thus, before approving a decree affecting a separate sovereign, the district court—

> must ensure that there is a substantial federal claim, not only when the decree is entered but also when it is enforced, and that the obligations imposed by the decree rest on this rule of federal law rather than the bare consent of the officeholder. When making these inquiries, courts are bound by principles of federalism (and by the fundamental differences between judicial and political branches of government) to preserve the maximum leeway for democratic governance.

*Evans,* 10 F.3d at 479. Simply stated, the district court should require a showing of "at least a probable violation" of the law before approving a consent decree which requires a separate sovereign not only to comply with the law, but also to substitute its sound discretion with court-ordered procedures. *Kasper,* 814 F.2d at 342.

All this is not to say that the district court must conclusively decide the merits of the controversy before approving a consent decree between sovereigns. *Citizens for a Better Environment v. Gorsuch,* 718 F.2d 1117, 1126 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984). The court, however, must carefully scrutinize the proposed decree and find it appropriate to remedy a probable violation of law under the facts presented. *United States v. City of Miami,* 664 F.2d 435, 441 (5th Cir.1981) (Rubin, J., concurring). Otherwise, the court could not conclude that the proposed decree is fair, reasonable, and in the public interest. *State of Colorado,* 937 F.2d at 509.

## III.

This court doubts that in enacting § 203 of the VRA, Congress intended to subject the election procedures of county government to seemingly endless federal court supervision without good reason. What Congress did intend in enacting § 203 was that "language minority populations have substantive access to the ballot." H.R.Rep. No. 655, 102d Cong., 2d Sess. 5, *reprinted in* 1992 U.S.C.C.A.N. 766, 769. In the case of historically unwritten languages, such as Navajo

and Zuni, the covered jurisdiction "is only required to furnish oral instructions, assistance, or other information relating to registration and voting." 42 U.S.C. § 1973aa-1a(c).

The Attorney General's interpretation as to what is required of covered jurisdictions under § 203(c) is contained in 28 C.F.R. Part 55 (1995). The Attorney General measures compliance with § 203(c) by determining whether the covered jurisdiction has taken "all reasonable steps" to ensure that minority language voters have received information and assistance allowing them to "participate effectively in voting-connected activities." 28 C.F.R. § 55.2(b)(1) & (2). The covered jurisdiction is responsible for deciding what steps are necessary to achieve that goal: *"The determination of what is required for compliance with . . . § 203(c) is the responsibility of the affected jurisdiction.* These guidelines should not be used as a substitute for analysis and decision by the affected jurisdiction." *Id.* § 55.2(c) (emphasis added); *accord* § 55.14(c). The measure of a covered jurisdiction's success in complying with § 203(c) is results: "Compliance with the requirements of . . . § 203(c) is *best measured by results." Id.* § 55.16 (emphasis added).

### A.

The results which McKinley County's minority language assistance program has achieved in the ten years since the court's entry of the original "Consent Decree" are commendable. McKinley County has a population of 60,700. The county's Navajo voting age population is 18,000. The county's Zuni voting age population is 4,200. While undoubtedly some of McKinley County's Native Americans speak limited English, the record is unclear as to the number of Native Americans requiring language assistance at the polls. Apparently, however, a great number of Native Americans in McKinley County have "substantive access to the ballot." Presently, seven of nine elected county officials in McKinley County are Native American. The county manager, an appointed official, is Native American. Two of three state senators representing McKinley Coun-

ty are Native American. Two of the county's four state representatives are Native American.

Further, McKinley County has registered an additional 8,000 eligible voters and established an additional 22 polling places or precincts since the court's entry of the original "Consent Decree" ten years ago. In May 1986, 18,000 registered voters resided in McKinley County. In July 1996, 26,000 registered voters resided in McKinley County. In 1986, McKinley County had 42 polling places or precincts—25 county, 15 city, and 2 Zuni. In July 1996, McKinley County had 64 polling places or precincts—38 county, 22 city, and 4 Zuni. At Zuni polling places, 85–90% of poll workers on election day are Zuni, at least half of whom are fluent in both Zuni and English. Similarly, at county polling places where the majority of registered voters are Navajo, 85–90% of poll workers on election day are Navajo. At least half of Navajo poll workers are fluent in both Navajo and English. Despite significant increases in registered voters and polling places, the rate of turnaways—those individuals not permitted to vote due to registration irregularities—has steadily declined in McKinley County.

In addition to implementing the voting procedures this court mandated in the "Consent Decree" and "First Amended Consent Decree and Order," McKinley County has willingly established at Plaintiff's request a "Mobile Satellite Election Office." This mobile office effectively brings McKinley County's Bureau of Elections to residents of the Navajo reservations. A voting rights coordinator and Navajo speaking deputy election clerk staff the office. The coordinator and clerk provide information and instruction regarding registration and voting. Among other things, the office registers voters, records address changes, provides potential candidates with filing information, and furnishes voters with applications for absentee and early voting.

### B.

Plaintiff acknowledges that over the past ten years, McKinley County has taken significant steps towards compliance with § 203(c)

of the VRA. Contrary to the Attorney General's guidelines for measuring compliance with § 203(c), however, Plaintiff asserts that results "have little to do with providing adequate language assistance to the Native American registered voters who need it." Plaintiff submits documentation, sworn and unsworn, showing instances where poll workers at certain polling places have failed to adequately translate the ballot contents for Navajo and Zuni language voters. Plaintiff claims McKinley County's failure to adequately train ballot translators effectively denies Navajo and Zuni language voters equal access at the polls.

Differences in culture and vocabulary make translating English into Navajo or Zuni a complex and difficult task. For instance, no word exists in the Navajo or Zuni languages for Republican or Democrat. Much is necessarily left to the translators' discretion. The court does not dispute *on this record* that irregularities and inconsistencies in translation remain. But if the court considered every inconsistency or irregularity in ballot translation a violation of the VRA, federal court intervention into and oversight of McKinley County's electoral process might never end. Congress in enacting § 203(c) of the VRA "did not authorize federal courts to be state election monitors." *Gamza v. Aguirre*, 619 F.2d 449, 454 (5th Cir.1980). The Attorney General realizes as much in 28 C.F.R. §§ 55.2(c), 55.14(c), which state that a jurisdiction covered under § 203(c) should determine what is necessary to comply with § 203(c).

Entry of the "Second Amended Consent Decree and Order" as written would be improvident because regulation of election procedures should be left to the responsible sovereign "unless a particular procedure is *essential* to cure an ongoing violation of federal law." *Evans*, 10 F.3d at 480 (emphasis added). By "not opposing" entry of the proposed decree, but not admitting any ongoing violation of § 203(c), McKinley County appears willing to sacrifice the appropriate balance between local and national power, and thus the public interest, merely to avoid the expense of litigation. But no reason exists why this court's refusal to enter the "Second Amended Consent Decree and Order" should sound the death knell of the parties' cooperation or lead to protracted litigation. McKinley County represents in its response to the court that the county will continue providing oral assistance and instruction to Navajo and Zuni language voters at every stage of the electoral process. The county further represents in its response to the court that the procedures now in place as a result of the original "Consent Decree" and "First Amended Consent Decree and Order" will remain in place.

The court is not denying the parties' right to settle on mutually agreeable terms. The court, however, is unwilling after ten years of progress in McKinley County to enter a decree as Draconian as that proposed. The "Second Amended Consent Decree and Order," purchased at the cost of placing a federal court in control of local election procedures where the need for such control, while once apparently justified, is now apparently dubious, comes at too high a cost to democratic principles.

Accordingly, Plaintiff's motion for reconsideration is DENIED.