United States Court of Appeals,

Eleventh Circuit.

No. 96-2891.

Charles L. STOVALL, Martha Ray Bethel, W.O. Wells, Reverend, Joann Stovall, Sylvester Weaver, Plaintiffs-Appellants,

v.

CITY OF COCOA, FLORIDA, Cocoa City Council, Mike Hill, Mayor-Councilmember of the City of Cocoa, Ray Griffin, Alex Greenwood, John Lee Blubaugh, Dave Salisbury, Phyllis Churchill, Members of the Cocoa City Council, Beth Dabrowski, Clerk of the City of Cocoa, Rudolph V. Stone, Commissioner of the City of Cocoa, Defendants-Appellees,

Joel Robinson, Mathew Ford, Susan Griffin, Beverly Cathechis, Amici Curiae.

July 24, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-257-CIV-ORL-18), G. Kendall Sharp, Judge.

Before DUBINA, Circuit Judge, and HILL and GIBSON[*], Senior Circuit Judges.

DUBINA, Circuit Judge.

Plaintiffs/appellants ("plaintiffs") appeal the district court's order granting defendants/appellees' (collectively, "the City") motion to withdraw a joint motion for approval of a consent decree and entry of judgment. For the reasons that follow, we vacate and remand.

I. BACKGROUND

This is the second time we have considered an appeal in this voting rights case. In 1993, plaintiffs, black residents of the City of Cocoa, Florida, filed their complaint alleging that the at-large method of electing city council members diluted minority voting strength in violation of § 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973(b). Prior to trial, the parties agreed upon a settlement under which four of the five council members would be elected from single-member districts, while the fifth council member, who also serves as mayor, would continue to be elected at-large. Black voters would constitute a majority of one of the single-member districts. After the city council approved the plan by a 3-2 vote, the parties filed a joint motion in the district court to

---

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

enter a consent decree. Four Cocoa City registered voters appeared as *amici* in opposition to the entry of the consent decree.

The district court denied the joint motion on the ground that one of the council members who had voted in favor of the plan should have abstained because he was a former plaintiff in the lawsuit and thus had a conflict of interest under Florida law. Plaintiffs appealed and a panel of our court reversed, finding no conflict of interest. *See George v. City of Cocoa, Fla.,* 78 F.3d 494 (11th Cir.1996). Our court remanded the case "for further proceedings not inconsistent with this opinion." *Id.* at 499. Three days after the mandate issued, the City filed a motion in the district court to withdraw the joint motion to enter a consent decree. The City argued that the districting plan would violate the Equal Protection Clause of the Fourteenth Amendment. Over plaintiffs' objections and without explanation, the district court granted the motion by simply writing on the first page of the City's motion, "Granted. Case shall proceed to trial."

The plaintiffs then perfected this appeal. Additionally, they filed motions to enforce the mandate from the previous appeal and for a writ of mandamus. This court denied both motions.

## II. ISSUES

(1) Whether this court has jurisdiction to entertain the appeal.

(2) Whether the district court erred in refusing to approve the consent decree.

## III. STANDARDS OF REVIEW

Subject matter jurisdiction is a legal issue which we consider *de novo. Sims v. Trus Joist MacMillan,* 22 F.3d 1059, 1060 (11th Cir.1994).

District courts should approve consent decrees so long as they are not unconstitutional, unlawful, unreasonable, or contrary to public policy. *E.g., Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977)[1]; *see also Howard v. McLucas,* 871 F.2d 1000, 1008 (11th Cir.1989) (district court should determine whether consent decree "represent[s] a reasonable factual and legal determination based on the record, and ensure that it [does] not violate federal law"). The parties disagree on the

---

[1]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

standard we should use in reviewing the district court's refusal to approve the consent decree. Plaintiffs claim the standard is *de novo;* the City argues it is abuse of discretion.

The law in our circuit is not crystal clear. District court decisions to approve, modify, or not modify consent decrees are reviewed for abuse of discretion. *Jacksonville Branch, NAACP v. Duval County School Bd.,* 978 F.2d 1574, 1578 (11th Cir.1992). However, the former Fifth Circuit held that a district court's *refusal* to approve a consent decree is subject to plenary review. *See U.S. v. City of Alexandria,* 614 F.2d 1358, 1361-62 (5th Cir.1980).[2] More recently, we stated that "the duty of an appellate court is simply to ascertain whether or not the trial judge clearly abused his discretion in approving *or rejecting* a settlement agreement." *Brooks v. Georgia State Bd. of Elections,* 59 F.3d 1114, 1119 (11th Cir.1995) (emphasis added). One way to reconcile these decisions is to tailor the standard of review to the district court's rationale for rejecting the proposed consent decree. A district court's conclusion that a proposed decree would be unlawful is a legal determination which should be subject to *de novo* review. *See United Egg Producers v. Standard Brands, Inc.,* 44 F.3d 940 (11th Cir.1995) (reviewing *de novo* district court's refusal to approve settlement stipulation because it violated First Amendment). On the other hand, a conclusion that a proposed decree would be unreasonable or unfair is more appropriately reviewed for abuse of discretion. As the court noted in *City of Alexandria,* "the degree of appellate scrutiny must depend on a variety of factors, such as the familiarity of the trial court with the lawsuit, the stage of the proceeding at which the settlement is approved, and the types of issues involved." 614 F.2d at 1361.

In the present case, the district court did not specify the basis for its rejection of the proposed consent decree. Therefore, as explained *infra,* meaningful review would be difficult under either standard of review, given the state of the record.

IV. ANALYSIS

---

[2]In *Williams v. City of New Orleans,* 729 F.2d 1554, 1558-59 (5th Cir.1984) (en banc), the Fifth Circuit limited *City of Alexandria's de novo* standard of review to exceptional cases in which the parties reached a settlement agreement early in the process and the district court had no special knowledge of the circumstances surrounding the case. The general rule, according to the *Williams* court, is abuse of discretion. Of course, we are not bound by the Fifth Circuit's construction of former Fifth Circuit cases.

A. *JURISDICTION*

We raised *sua sponte* the issue of whether we have jurisdiction over this appeal. As a general matter, this court's jurisdiction is limited to the review of final orders of the district court. 28 U.S.C. § 1291. However, courts of appeals may review certain interlocutory decisions, including "orders of the district courts ... granting, continuing, modifying, *refusing* or dissolving *injunctions* ..." 28 U.S.C. § 1292(a)(1) (emphasis added). Under § 1292(a)(1), interlocutory orders which have the practical effect of denying injunctive relief are immediately appealable if the appellant can show (1) that the order might have a "serious, perhaps irreparable consequence," and (2) that the order can be "effectively challenged" only by immediate appeal. *In re Culton,* 111 F.3d 92, 93 (11th Cir.1997), *citing Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996-97, 67 L.Ed.2d 59 (1981).

*Carson* controls this case. In *Carson,* the Supreme Court held that a district court order refusing to enter a consent decree in a Title VII case was immediately appealable under § 1292(a)(1). First, the Court reasoned that the consent decree effectively constituted a permanent injunction because it prohibited future racial discrimination, altered seniority and benefits systems, and established hiring goals. *Carson,* 450 U.S. at 83-84, 101 S.Ct. at 996-97. Second, the Court held that without immediate appeal, (1) petitioners would lose the opportunity to settle their case on the negotiated terms, and (2) they would be delayed in obtaining the injunctive benefits of the settlement they negotiated. *Id.* at 89, 101 S.Ct. at 999. "These constitute "serious, perhaps irreparable, consequences' that petitioners can "effectually challenge' only by an immediate appeal." *Id.* at 90, 101 S.Ct. at 999; *see also U.S. v. City of Alexandria,* 614 F.2d at 1361 n. 5 ("an order refusing approval of a consent decree is necessarily one "refusing' an injunction for purposes of § 1291(a), and is therefore appealable").

Here, as in *Carson,* the consent decree was, effectively, an injunction because it would have imposed a new method of electing city council members. The City argues that plaintiffs will not be irreparably harmed because the next City election is a year and a half away and "the alleged harm to the appellees cannot be remedied short of revoking this [sic] results of the most recent election

and ordering new elections." Appellees' Br. at 7. However, the City ignores the other important harm identified by the Supreme Court in *Carson:* the loss of the "bargain" obtained through negotiation. Moreover, it is not clear that a trial in the district court would conclude in time to affect the next election. The City also argues that this appeal was not plaintiffs' only means of obtaining review of the district court's order because plaintiffs also sought, albeit unsuccessfully, a writ of mandamus from this court. However, as plaintiffs point out, § 1292(a)(1) requires not that interlocutory appeal be the *only* means of challenge, but that it be the only *effective* means of challenge. In our view, plaintiffs should not be penalized for pulling out all the stops.

Finally, it is worth noting that the first time this case was appealed, the same jurisdictional issue was presented. The panel decided the question in favor of plaintiffs, though without explanation. *See George,* 78 F.3d at 495 ("This case comes to us on appeal from the district court's order denying the parties' joint motion to approve a consent decree and enter judgment. We have jurisdiction ..."). In the present appeal, plaintiffs again appeal the district court's refusal to approve the consent decree and enter judgment. The only difference is that now the City wants to back out of the consent decree. While that fact may affect the merits of the case, it is not jurisdictionally relevant. *See Carson,* 450 U.S. at 87 n. 13, 101 S.Ct. at 998 n. 13 (court of appeals had jurisdiction even though respondents sought to withdraw their consent to the settlement agreement).

In sum, we conclude that we have jurisdiction over this appeal.

B. *MERITS*

Plaintiffs argue that, having entered into the settlement agreement voluntarily and with full authority, the City is bound by that agreement and may not withdraw its support for the consent decree. In *Allen v. Alabama State Bd. of Educ.,* 816 F.2d 575 (11th Cir.1987), black teachers challenged the Alabama State Board of Education's teacher certification policy. The parties negotiated a proposed settlement, which the Board voted to approve. The parties notified the court of the settlement. One week later, in response to public criticism, the Board voted to disapprove the settlement. The plaintiffs moved to enforce the settlement agreement, but the district court denied their motion. The Eleventh Circuit reversed, holding that the settlement agreement was binding

upon the Board. *Id.* at 577;[3] *see also, e.g., Reed by and through Reed v. U.S.,* 891 F.2d 878, 882 n. 3 (11th Cir.1990) ("Once an agreement to settle is reached, one party may not unilaterally repudiate it.").

*Allen* was a Title VII case, but the Fourth Circuit has held that the rule announced in *Allen* applies in Voting Rights Act cases, as well. In *Moore v. Beaufort County, N.C.,* 936 F.2d 159 (4th Cir.1991), plaintiffs in a § 2 case reached a settlement with the defendant county which required changing the method of electing county commissioners. The county tried to repudiate the agreement due to public pressure. Although the district court had not yet approved the plan, the Fourth Circuit held that the county was bound by the agreement. *Id.* at 163 (citing *Allen* ). We agree with the Fourth Circuit's analysis and conclude that the district court here was not free to reject the consent decree solely because the City no longer wished to honor its agreement.

However, just because the settlement agreement was binding upon the parties does not mean it was binding on the district court. *See League of United Latin Amer. Citizens Council No. 4434 v. Clements,* 999 F.2d 831, 845 (5th Cir.1993) (en banc) (citations omitted) ("Even if all of the litigants were in accord, it does not follow that the federal court must do their bidding.... The entry of a consent decree is more than a matter of agreement among litigants. It is a judicial act."). The district court could have—indeed, should have—rejected the consent decree if it determined the decree was unreasonable, unfair, or, as the City alleges, unconstitutional. *See White v. State of Ala.,* 74 F.3d 1058, 1074 (11th Cir.1996) (district courts lack power in § 2 cases to enter consent decrees that provide unauthorized remedies). As the former Fifth Circuit has stated:

> Even though the decree is predicated on consent of the parties, the judge must not give it perfunctory approval.... Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence. This requires a determination that the proposal represents a reasonable factual and legal determination based on the facts of record, whether

---

[3]The City argues that *Allen* does not apply because in that case, the district court had approved the settlement before the Board sought to back out. However, as plaintiffs point out, the court's approval was only tentative; the court had not yet decided whether to enter a consent decree. *Allen* is not distinguishable on that ground.

established by evidence, affidavit, or stipulation. *If the decree also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor proscribed.*

*U.S. v. City of Miami, Fla.,* 664 F.2d 435, 440-41 (5th Cir.1981) (en banc) (emphasis added).[4]

The City argued in the district court that adopting the districting plan would render it vulnerable to a racial gerrymandering equal protection claim. On the other hand, plaintiffs invite us to apply *de novo* review, find the plan constitutional, and direct the district court to approve the consent decree. Even assuming *de novo* review is the appropriate standard, we decline the plaintiffs' invitation. It is apparent to us that the record is not adequately developed to permit meaningful review of the proposed consent decree, either by this court or by the district court. The district court held a hearing in 1994 concerning whether to approve the decree, but that hearing was limited to the propriety of one of the councilman's participation in the city council vote. The parties have conducted no discovery in the case. The only constitutionally relevant evidence before the district court was affidavits from two experts opining that the current at-large scheme diluted minority voting strength and that the proposed districting plan was narrowly tailored to remedy that problem.

The constitutional issues at stake here require rather complex factual analysis not possible on such a limited record. The Equal Protection Clause prohibits the use of racial classifications in electoral districting. *E.g., Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). Strict scrutiny applies to districting plans whose drafters "subordinated traditional race-neutral districting principles, including but not limited to compactness, contiguity, respect for political subdivisions or communities defined by actual shared interests, to racial considerations." *Miller v. Johnson,* 515 U.S. 900, ----, 115 S.Ct. 2475, 2488 (1995); *see also, Abrams v. Johnson,* Nos. 95-1425 & 95-1460, 1997 WL 331802, --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d. ---- (U.S. June 19, 1997); *Bush v. Vera,* --- U.S. ----, ---- - ----, 116 S.Ct. 1941, 1951-53, 135 L.Ed.2d 248 (1996) (O'Connor, J., plurality op.). Such plans must be narrowly tailored to serve a compelling interest, *e.g.,* remedying past discrimination. *Miller,* 515 U.S. at ---- - ----, 115 S.Ct. at 2490-91.

---

[4]*City of Miami* was decided after October 1, 1981, but is binding precedent for the Eleventh Circuit because it was decided by the full en banc court of the former Fifth Circuit. *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

Plaintiffs contend that strict scrutiny does not apply because the drafters adhered to traditional race-neutral districting principles. They point out that the single majority-black district is geographically compact, contiguous, and regular in shape. *See* Addendum to Appellants' Br. (color-coded copy of districting plan). Even if strict scrutiny applies, plaintiffs contend the plan passes muster. They argue that the compelling interest is compliance with § 2 of the Voting Rights Act, and that the plan is narrowly tailored because it creates only one majority-black district drawn according to traditional principles. Plaintiffs may very well be correct; however, recent Supreme Court opinions make clear that the decision whether to apply strict scrutiny involves the consideration of many factors, not just the shape of the district(s) in question. *See Miller,* 515 U.S. at ----, 115 S.Ct. at 2487 (evidence other than a district's "bizarre" shape can be used to support the claim); *Bush,* --- U.S. at ---- - ----, 116 S.Ct. at 1951-54. If strict scrutiny *does* apply, the analysis becomes even more complex. Plaintiffs claim that the compelling interest here is the remediation of vote dilution. Thus, a court would have to ascertain whether plaintiffs have made out a § 2 claim under the principles set forth in *Thornburg v. Gingles,* 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). The two affidavits in the record are not enough to permit the district court to evaluate constitutionality and are certainly insufficient for us to do it here.

Plaintiffs argue that to require the district court to conduct a full evidentiary hearing before approving the settlement would defeat the purpose of a settlement—to "save the time, expense, and psychological toll [and] also avert the inevitable risk of litigation." Appellants' Reply Br. at 15, *quoting City of Miami,* 664 F.2d at 439. However, this is not an ordinary, private settlement. It is a districting plan which will change the method of electing city council members and affect the rights of all Cocoa, Florida, voters. Four of these voters appeared as *amici* before the district court in opposition to the proposed consent decree. Under these circumstances, the district court's inquiry must be more than perfunctory. In a case quite similar to this one, the Fifth Circuit stated that a district court "has at the very least the discretion, if not indeed the duty" to hold an evidentiary hearing to determine whether to accept a consent decree which would impose a new method of election. *Overton v. City of Austin,* 748 F.2d 941, 953 (5th Cir.1984). We agree with the Fifth

Circuit and direct on remand that the district court conduct an evidentiary hearing.

## V. CONCLUSION

In deciding whether to approve a consent decree, the district court must evaluate whether the decree is fair, reasonable, and lawful. The record was insufficient for the district court to make this determination and is clearly insufficient for us to make it now. Accordingly, we vacate the district court's order and remand this case to the district court for further proceedings consistent with this opinion.

VACATED and REMANDED.